**UNITED STATES of America,
Appellee,**

v.

**Rudolph D. BAKER and Otis Baker,
Appellants.**

**No. 13744.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 6, 1969.

Decided April 23, 1970.

Irvin B. Tucker, Jr., Raleigh, N. C. (court appointed attorney), for appellants.

William H. Murdock, U. S. Atty. (William L. Osteen, U. S. Atty., and Richard M. Dailey, Jr., Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and WIDENER, District Judge.

WIDENER, District Judge:

This appeal is from the conviction of Rudolph B. Baker and Otis Baker in the district court on indictment charging them with conspiracy to violate the Internal Revenue Code relating to distilled spirits. The indictment charged that the conspiracy and five overt acts occurred in July and August 1967.

Appellants raise a single issue on this appeal. They contend that their constitutional rights under the due process clause of the 5th Amendment were violated because of a delay of approximately eighteen months between the offense and their indictment and arrest in February 1969.

The court finds no merit in appellants' assignment of error and affirms the convictions.

The government's evidence revealed that Jack C. Berry, the government's single witness, was an agent with the Alcohol, Tobacco, and Firearms Division of the Treasury Department. He had been so employed since 1952. On July 16, 1967, Berry was maintaining a residence in Davidson County, North Carolina, for the purpose of investigating violations of the federal law pertaining to distilled spirits. Berry was operating incognito and engaged in only one principal investigation at this time. He had met Rudolph Baker on numerous occasions prior to July 16, 1967, and was well-acquainted with him; he met Otis Baker for the first time on July 16, 1967. On this latter date, appellants, who were accompanied by a man named John and a woman named Carolyn, met Berry at his home in Davidson County. Appellants and Berry, in the presence of the man named John, discussed detailed arrangements for the sale and delivery of illegal spirits by the appellants to the agent, the Bakers being unaware of Berry's actual identity. On August 18, 1967, pursuant to the previous arrangements, Rudolph Baker called Berry concerning the proposed delivery of a load of illegal spirits and called the agent again on August 21, 1967, concerning the same delivery. On August 23, 1967, just after midnight of August 22nd, Otis Baker, accompanied by John, delivered to Berry one hundred eighty gallons of illegal spirits, for which the agent paid Otis Baker Nine Hundred Dollars. On August 30, 1967, just after midnight of August 29th, Otis Baker, again accompanied by John, delivered to the agent one hundred eighty gallons of illegal spirits and received another Nine Hundred Dollars in payment. The agent kept notes concerning these matters.

On February 13, 1969, approximately eighteen months after the conspiracy commenced, appellants were indicted by a Grand Jury. On February 14, 1969, warrants of arrest were issued, and they were arrested February 18, 1969.

During the trial, Otis Baker, testifying in his own behalf, admitted taking part in the illegal transactions as above set forth, but denied that Rudolph Baker had any knowledge of same. His testimony corroborated the agent's in placing Rudolph at the agent's home on July 16, 1967, when the first meeting of the conspiracy took place; however, he denied that Rudolph took part in the conversation concerning the sale of illegal spirits, and that Rudolph was aware of said conversation. Rudolph Baker did not testify. Neither of the appellants called John as a witness, nor did they call Carolyn, who was present in the courtroom during the trial.

Appellants rely heavily upon Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1964), and Woody v. United States, 370 F.2d 214 (D.C. Cir. 1966), in seeking reversal of their convictions due to pre-indictment delay. These cases involved pre-arrest delay of seven months and four months,

respectively. They involved alleged narcotics violations and each conviction was based upon the sole testimony of a Washington, D. C., Metropolitan Police Force undercover agent who was investigating the possible involvement of a large number of individuals at the same time. In each case the agent had met the accused on one brief occasion some months prior to trial, had no personal recollection of the meeting, was able to testify only from his notes, and provided the sole evidence for the prosecution. Under such circumstances, the court was concerned with a pattern of police investigation which presented unacceptable and unwarranted opportunities for error and which raised substantial doubt as to the accuracy and reliability of the identifications of the defendants due to the brief contacts of the agents with them and the lack of personal recollection of the agents as to the narcotics transactions involving the defendants then on trial. Our court has recognized that a constitutional question may well arise under such circumstances. United States v. Harbin, 377 F.2d 78 (4th Cir. 1967).

■ The instant case is readily distinguishable from *Ross* and *Woody*. Here, the agent had contacts with both appellants over a period of time covering several weeks, and the agent understandably was able to positively identify both appellants. Agent Berry had an independent recollection of events which had occurred during the investigation and merely referred to his notes to refresh his memory. Most experienced investigating officers take notes and it is neither unusual nor improper for the officer to use such notes during his testimony, as did the agent here, to refresh his memory as to specific dates and details. The objection arises when, due to a long delay and the massive scope of an undercover investigation, the officer has little or no independent recollection of the events involving the defendants on trial which occurred during the investigation and the agent is forced to rely almost exclusively on his notes as the basis of his testimony.

In the instant case, we cannot overlook the fact that Otis Baker's testimony tended to corroborate important details of agent Berry's testimony. The only factual issue in this case was one dealing with the credibility of the Government's witness as opposed to the testimony of the co-conspirator, Otis Baker, which issue was resolved against the defendants by the trial court. In *Ross* and *Woody*, the testimony of the agents was totally unsupported by any other evidence.

■ The law is clear that a mere showing of delay in indictment and arrest is not sufficient to show a constitutional violation, that prejudice will not be presumed from mere delay, and that a defendant must bear the burden of proving prejudice by a pre-indictment delay.[1] United States v. Capaldo, 402 F.2d 821 (2 Cir.1968); United States v. Hauff, 395 F.2d 555 (7 Cir. 1968); United States v. Feinberg, 383 F.2d 60 (2 Cir.1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836. The mere assertion by the defendant of inability to recall what happened on the day of the offense is not enough. United States v. Evans, 385 F.2d 824 (7 Cir. 1967); United States v. Napue, 401 F.2d 107 (7 Cir. 1968), cert. denied 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969). There was no attempt made in the court below to show any prejudice and the record contains no evidence of prejudice. It is significant that defense counsel, in moving the trial court for dismissal because of the delay, stated only that he was making the motion "just for the record," without attempting to assign specific reasons to show in what manner appellants might have been prejudiced. Counsel did not request an opportunity to present evidence or to be heard on the matter. A remand for re-

1. For a recent decision in this circuit on North Carolina law on the same subject, see Lassiter v. Turner, 423 F.2d 897 (4th Cir. 1970).

hearing on the question of prejudicial delay would serve no useful purpose. Appellants had ample opportunity to present the necessary evidence of prejudice but they failed to do so.

Affirmed.